### UNITED STATES of America

v.

### Walter Leroy MOODY, Jr., et al., Defendants.

### Cr. No. 90–41–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Oct. 4, 1990.

violated the FLSA is also a factual determination that must be made by the trier of fact at trial.

Edward D. Tolley, Athens, Ga., Sandra J. Popson, Macon, Ga., for defendants.

Samuel A. Wilson, Jr., Macon, Ga., Asst. U.S. Atty. Louis J. Freeh, Special Prosecutor, for U.S.

James A. Demetry, Dow, Lohnes & Albertson, Bruce P. Brown, Long, Aldridge & Norman, Atlanta, Ga., Ed S. Sell, III, Sell & Melton, Macon, Ga., for intervenors.

### ORDER

OWENS, Chief Judge.

The Macon Telegraph Publishing Company, Cindy Sams, one of its reporters, *The Fulton County Daily Report, The Atlanta Journal* and *The Atlanta Constitution, et al.*, have moved to intervene in this criminal case for the purpose of objecting to the closure and sealing of a proffer of evidence made by the government during an in-chambers conference on July 13, 1990, during the pretrial detention hearing in this case. The motion of the above petitioners to intervene is GRANTED. Because the legal issues are clear and well-articulated in the parties' briefs, the court will not hear oral argument.[1] Having considered the relevant case law, the briefs filed by the parties, and the arguments

1. Counsel for all parties were informed by Ms. Diane Holmstrom, Courtroom Deputy Clerk, of the court's intention to decide this matter without oral argument. Counsel for the parties voiced no objection.

## FACTUAL BACKGROUND

Following their grand jury indictment, Walter Leroy Moody, Jr. and Susan Moody were arrested on July 10, 1990, and brought before the court for their initial appearance on the same evening. The government immediately moved to detain both defendants pursuant to 18 U.S.C. § 3142(f)(2)(B). The required detention hearing then commenced on July 12, 1990, and was concluded on July 13, 1990. These court proceedings were extensively attended and reported by representatives from local and national media organizations. Evidence was presented by the government which included testimony by five witnesses and various proffers. The defendants also offered proffers of evidence. The presentation of the evidence, proffers considered by the court during the course of the detention hearing, and the court's rulings excepting only the subject proffer were in open court.

On July 13, 1990, the government in open court advised of its intention to proffer evidence pertaining to the December, 1989, mail bombings which killed Eleventh Circuit Judge Robert Vance and Savannah Alderman Robert Robinson. Prior to any mention of defendants' names in connection with these bombings, defense counsel objected and asked to be heard at a bench conference. The court then recessed and reassembled with counsel and the defendants in chambers to consider the objections. The government in chambers outlined the information contained in the proffer it desired to present regarding the 1989 mail bombings. The court ruled that it would neither accept nor consider such proffer as part of the ongoing detention hearing.

The court was then reconvened, at which time the court gave the following explanation:

Ladies and Gentlemen, the law surrounding detention hearings commits to the Trial Court, in the exercise of its sound discretion, the question of whether or not to permit evidence to be proffered. A proffer, in lay language, simply means that an attorney is permitted to state to the Court evidence that he believes could be presented to the Court, but is, in truth and fact, being summarized to the Court by the lawyer. Evidence out of the lawyer's mouth is hearsay. Mr. and Mrs. Moody, in this Court, are charged with conspiring to cause perjured testimony to be presented to another judge of this court in another case, and further charged with then conspiring to cause the fact of perjury to be concealed from those who were investigating that possibility. The charges in this Court do not involve the bombing that the Government has mentioned. Neither Mr. and Mrs. Moody have been indicted for bombing. When and if they are indicted, that would be a matter to be taken up by the appropriate court. It is not before this court. In the Court's best judgment, it is ... not appropriate for this Court to hear any proffered evidence concerning the possibility that either Mr. or Mrs. Moody may have had some involvement in that bombing. ...

The court then allowed Mr. Sell, counsel for the *Macon Telegraph* to make an objection to the sealing of the transcript of the in-chambers conference. Counsel then requested that the transcript be made available to the press. The court indicated that it would consider Mr. Sell's request, but for the moment the court did not believe that the press was entitled to a transcript. The court then gave permission for the intervenors to file a formal request for a copy of the transcript. The hearings then resumed.

## DISCUSSION

The First Amendment right of public and press access to criminal proceedings is not absolute. "While open criminal proceedings give assurance of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity." *Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). (*"Press–Enterprise II"*); (quoting *Press–Enterprise Co. v. Superior Court of Cali-*

*fornia,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*"Press–Enterprise I"*)). Under the standard established by the Supreme Court, the First Amendment right to access to criminal proceedings and records cannot be abrogated and closure ordered "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II at 13–14,* 106 S.Ct. at 2743, 92 L.Ed.2d at 13. "If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if the specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id.* at 14, 106 S.Ct. at 2743, 92 L.Ed.2d at 13–14.

In the instant case, the court is not concerned with the closing of the detention hearing to the press or the public. The detention hearing of the defendants in the instant case was open to and well attended by the press and the public. What is at issue is whether the press has a First Amendment right of access to communications between counsel and the court which take place at the bench or in chambers, when those communications involve evidence which the court determines to be inadmissible and which, if disclosed, could possibly deprive the defendant of a fair trial.

Although the Supreme Court has held that the press has a qualified First Amendment right to attend preliminary hearings, it has never held that the press or the public has a First Amendment right to discover the content of communications between counsel and the judge conducted at the bench or in chambers. In determining whether to grant access to this in-chambers discussion, the court should first ask whether the "place and process have historically been open to the press and general public," and second, "whether public access plays a significant positive role in the functioning of [the] particular process in question." *Id.* at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 10. The answer to both of these questions is no.

As the Supreme Court noted in *Press–Enterprise II,* "although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." The process at issue here is such a process. Communications between the court and counsel, at the bench or in chambers, usually involve questions regarding the admissibility of evidence which require the court to make a decision regarding the particular evidence offered. If the evidence is deemed admissible, it is admitted and heard by all. If it is deemed inadmissible, it is excluded and not heard by the jury, the press, or the public. Historically speaking, the place and process at issue here (i.e., communications between the court and counsel at the bench or in chambers) have never been open to the press or the general public. Having found no historical basis for allowing the press and public access to the process at issue, the court will now address the second prong of the *Press–Enterprise II* analysis.

Public access to communications between the court and counsel, at the bench or in the judge's chambers, does not play a significant positive role in the functioning of the judicial process. In fact, allowing the public and press access to communications between the court and counsel, at the bench or in the judge's chambers, would have a negative effect on the functioning of the judicial process. In order to safeguard the due process rights of the accused, a trial judge has an affirmative duty to minimize the effects of prejudicial pretrial publicity. *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979). One way of doing that is to exclude from consideration all prejudicial evidence which is not relevant to the proceedings before the court, as was done in the instant case. Allowing the press and public access to communications between the court and counsel at the bench or in chambers, would allow the dissemination of information

which could be highly prejudicial to the defendant's right to a fair trial.

That communication between counsel and the court, at the bench or in a judge's chambers, is confidential is supported by the Eleventh Circuit Court of Appeals' recent opinion in an unrelated case involving these same defendants. In *Walter Leroy Moody, et al. v. United States of America,* 908 F.2d 979 (11th Cir.1990), the Eleventh Circuit Court of Appeals ordered certain documents which had been sealed by the district court unsealed, but in doing so stated, "the transcripts of the discussions between the district court judge and the parties and their counsel in his chambers should, of course, remain sealed." *Id.* at 6 [908 F.2d 979 (Table)].

It is thus this court's considered judgment that the press has no First Amendment right of access to communications between counsel and the court which take place at the bench or in chambers, particularly when those communications involve evidence which the court determines to be inadmissible and which, if disclosed, could deprive the defendant of the fair trial by an impartial jury that the Constitution guarantees.

Intervenors' motions to be afforded access to the sealed transcript of the proffer of evidence made by the government during an in-chambers conference on July 13, 1990, is, therefore, DENIED.

SO ORDERED.